MARTIN v. ARNDT.

1. Adverse Possession—Record Title—Burden of Proof.
   Plaintiffs who establish they were record titleholders of land in dispute did not have to prove defendants had not acquired rights by adverse possession, as the burden then rested upon defendants.

2. Same—Burden of Proof.
   The burden of proving adverse possession rests upon the party who alleges it.

3. Appeal and Error—Trial Court—Conflicting Testimony—Supreme Court.
   The Supreme Court is not in as good a position as the trial court to determine what the facts are with respect to conflicting testimony, hence, gives great weight to the findings of the trier of the facts in such an instance and does not substitute its judgment for that of the lower court.

4. Adverse Possession—Conflicting Evidence—Finding of Trial Court.
   Decree for defendants, adjoining owners of city lot, whereby they were held to have established title by adverse possession

---

References for Points in Headnotes
[1, 2] 1 Am Jur, Adverse Possession § 237.
[3, 4] 3 Am Jur, Appeal and Error § 888.

to tapered strip of land from 15″ to 23″ wide, 86′ 3″ long, upon which a curb had been constructed some 30 or more years ago is not disturbed on appeal, where the testimony presented was in conflict.

DETHMERS, C. J., and CARR and KELLY, JJ., dissenting.

Appeal from Saginaw; Brennan (John V.), J., presiding. Submitted January 17, 1959. (Docket No. 17, Calendar No. 46,242.) Decided April 14, 1959.

Bill by Frederick Martin and Rose Martin against Otto Arndt and Mary Arndt to enjoin encroachment in use of driveway. Cross bill, with claim of adverse possession, to enjoin obstructing use of the driveway. Decree for defendants. Plaintiffs appeal. Affirmed.

*Martin & Martin (Walter Martin, of counsel), for plaintiffs.*

*Irving M. Hart, for defendants.*

KELLY, J. (*dissenting*). Plaintiffs filed their bill of complaint in the Saginaw circuit court alleging:

(1) Plaintiffs and defendants are owners of adjacent lots situated in the city of Saginaw;

(2) Defendants asked and received from plaintiffs an oral right or license to use a part of plaintiffs' property for driveway purposes;

(3) When defendants commenced to make permanent alterations that extended upon plaintiffs' premises they were notified by plaintiffs that the license and permissive use were revoked, but defendants insisted upon carrying on toward making said permanent alterations.

The court issued a temporary injunction and, after hearing testimony, the trial court, by decree, held that defendants "have met and fulfilled all the re-

quirements necessary to establish title to the aforesaid disputed strip of land by adverse possession."

Five years elapsed after the decree was entered (June, 1953) before appellants filed a brief in this Court (September, 1958). Appellees filed no protest of delay prior to filing their brief on January 6, 1959.

Plaintiffs and defendants' lots are each 50 feet wide. The strip in dispute is 23 inches wide at the front lot line, tapering back for a distance of 86 feet 3 inches to a width of 15 inches.

Defendant Otto Arndt became owner of his lot in 1915 and plaintiffs of their lot in 1920. The boundary line between these 2 lots is the west line of defendants' property and the east line of plaintiffs' property. The front lines are on the north and the rear lot lines are on the south.

The court described plaintiffs and defendants neighborly relationship as follows:

"The plaintiffs and defendants are elderly people who have lived on these adjoining lots as friendly neighbors for the past 30 years or more. Plaintiff, Frederick Martin, is 77 years old; defendant, Otto Arndt, is 70. * * *

"These litigants are substantial, hard-working, law-abiding citizens of solid German stock. No word or dispute of any kind, according to the testimony, seems to have marred their 30 years of good neighborliness until the early summer of 1951, when a dispute over correcting the defendants' driveway caused some trouble between Mr. Martin's sons and defendant, Otto Arndt. This resulted in the calling of the police and shortly thereafter the filing of this suit, with temporary restraining order."

Plaintiff Frederick Martin testified that he purchased his property in April, 1920, but had moved into the house thereon in January, 1920, having rented for about 3 months; that there was no garage

or driveway on defendants' property at that time; that defendants built their garage in 1925 and a year or two later defendants tried to purchase a strip of land adjacent to plaintiffs' easterly lot line to widen their (defendants') drive and avoid driving on plaintiffs' lawn; that plaintiffs refused to sell but gave defendants permission to build a curb on plaintiffs' property to help keep defendants' car from going further onto their lawn; defendants built a curb about 4 inches high and when the frost broke it up and it was apparent a 4-inch curb would not protect plaintiffs' lawn, permission was given to defendants to replace the curb with one 8 inches higher; that defendants used ashes from their furnace as a base for their drive until 1951 when they started construction of a concrete drive, and plaintiff said "Mr. Arndt, no pour concrete on my property;" that when defendant refused, "I told him I wanted him to take the curb out and I didn't want him to put concrete on my land;" that plaintiffs knew where the property line was because defendant Otto Arndt's father established that line when plaintiffs purchased their property from him, but plaintiffs had a survey made after the dispute arose about pouring the concrete, which survey confirmed the boundary line as they understood it; that defendants knew the true lot line as is disclosed by the fact that both a garage and a picket fence were right on the survey stake and established the lot line from the garage back to the rear lot exactly as fixed by the surveyor; that after plaintiffs' objections to defendants installing the concrete drive, defendants again endeavored to purchase from plaintiffs the strip of land in dispute.

Defendant Otto Arndt testified that the first curb was put in in 1917 and the second curb was put in on top of the first curb; that he did not talk to plaintiffs or ask permission to build the first or second curb because he saw no necessity, believing that the

curb was being constructed within his lot line; that "the first curb was not put in to settle any dispute or argument about a boundary line. Now that the surveyor has staked 23 inches beyond, that is the first I ever knew about it," and all these years he has been claiming property through a mistake of where the actual boundary line was; that the second curb was installed before his garage was built and the garage was built in either 1922, 1923, 1924 or 1925; that plaintiffs wanted the curb removed before the survey was made; that before the curb was built he built concrete fence posts and put a wire fence up (being the same location as the picket fence later placed in rear of garage), which posts were within 1/2 inch of the lot line established by the surveyor, and the concrete posts he installed were at least 20 years old; that the front corner of his garage (northwest corner) "is probably in about 14 inches from the curb. When I built the curb, I didn't know that my land did not go that far. * * * I built my garage, according to the roof, with my lot line;" that his garage is about 20 feet in front of the back line of his lot; that he never had a conversation with Martin asking permission to establish the place he was going to build his drive; that he is able and does regularly drive his car into the driveway east of the pole that is now there and placed there by the surveyor; that he has purchased an additional 25 feet on the east side of his house, giving him 75-foot frontage on the street and that there are no buildings or permanent structures in that area and all of that area is available to an approach to his garage in the rear.

The only testimony that would either sustain plaintiffs' contention that they gave permission to defendants to extend their drive onto plaintiffs' lot, or to sustain defendants' position that no such agreement was ever asked for or given, is the testimony of

plaintiffs' son, Julius Martin, a home builder, 47 years of age at time of trial, residing in Saginaw. He testified that he was 14 years old when his parents bought the lot and at that time there was no curb existing; that defendants' garage was built in 1925 and that the first curb was installed because defendants' car was cutting ruts into his father's lawn; that in about 1926, when he was 21 years of age and was driving his first car, he was present and heard a conversation between Mr. Arndt and Mr. Martin; that this conversation was previous to the installation of the first curb. The following questions were asked and answers given by this witness in that regard:

"*Q.* Tell the court what the conversation was between Mr. Martin and Mr. Otto Arndt.

"*A.* Mr. Arndt asked permission about putting a curb in along that driveway. He said 'Mr. Martin, I haven't got enough room to get in and out of there with my car and if you will give me permission to put the curb on your property, why, it would help me to get a little more space on my driveway.'"

The witness further stated that his father gave permission but that the curb, about 2 or 3 inches above the ground and 4 inches wide, did not accomplish the desired results and that, while he knew another curb was built about 2 years later, he was not present when any discussion was had in regard to the second curb.

Two witnesses were called: One to support plaintiffs' contention that defendants had not constructed the first curb when plaintiffs bought their property, and the other to furnish proof that the curb was in existence in 1920.

Plaintiffs' witness, Yonke, testified that he was a farmer and lived in Unionville, about 25 to 30 miles from Saginaw; that he is well acquainted with plain-

tiffs and defendants and friendly with both; that as a renter he lived in the home next to defendants, which plaintiffs purchased; that he moved out in January, 1920, just before plaintiffs moved in; that up to January, 1920, there never was a driveway or a curb along defendants' line and that the area between plaintiffs and defendants' homes was all lawn, which he used to cut by borrowing defendants' lawn mower.

Defendants called witness Elsie Fettig, who testified that she lived in Saginaw and at one time worked in a photographer's shop and that exhibit "A" is a picture she took of her mother and Mrs. Arndt on defendants' porch; that her mother died on August 29, 1920; that the photograph showed a driveway curb existed at the time she took the picture, prior to her mother's death.

Defendants also introduced a picture of their niece, Margaret Arndt, now married and living in Alaska, showing her as a young girl seated on defendants' porch, and that a curb existed on the property. Defendant Otto Arndt stated that his niece is now past 34 years of age and that he would say she was 2 or 3 years old at the time the picture was taken.

After carefully reviewing the record, we find that the preponderance of the evidence sustained plaintiffs' contention that defendants had no right to use plaintiffs' property beyond the permission granted by plaintiffs.

Plaintiffs established they were record titleholders of the strip of ground in dispute and after such proof plaintiffs did not have to prove defendants had not acquired rights by adverse possession, as the burden then rested upon defendants.

In a recent decision, *Burns* v. *Foster* (Feb. 1957), 348 Mich 8, this Court established the following principles in a similar case:

(1) The burden of proving adverse possession rests upon the party who alleges it;

(2) A strict construction is applied to the doctrine of adverse possession;

(3) Adverse possession must rest upon clear and positive proof, not upon inference;

(4) Adverse possession must be established by clear and cogent proof of possession that is actual, visible, open, notorious, exclusive, continuous and un-interrupted for the statutory period of 15 years,* hostile and under cover of claim of right;

(5) To make good a claim of title by adverse possession, the true owner must have actual knowledge of the hostile claim or the possession must be so open, visible and notorious as to raise presumption of notice to the world that the right of the true owner is invaded intentionally, a mere permissive possession, or one consistent with the title of another, never ripening into a title by adverse possession.

Defendants failed to meet the requirement that they prove adverse possession, and the decree of the trial court is reversed and defendants' cross bill dismissed. The matter should be remanded to the trial court to issue permanent injunctive relief as prayed in plaintiffs' bill of complaint.

Decree should be reversed and remanded. Costs to appellants.

DETHMERS, C. J., and CARR, J., concurred with KELLY, J.

KAVANAGH, J. Plaintiffs filed a bill of complaint seeking to enjoin defendants from constructing a cement driveway on a portion of lot 3 in a subdivision in the city of Saginaw, Michigan, plaintiffs claiming ownership of all of lot 3.

---

* See CL 1948, § 609.1 (Stat Ann § 27.593).—REPORTER.

Defendants, owners of lot 4 in the same subdivision, filed a cross bill alleging that the property owned by the plaintiffs and the property owned by the defendants are adjoining lots, and the boundary line between these 2 lots runs along the outer edge of a cement concrete curb now in existence and which divides the 2 lots. Defendants further allege the boundary line between these 2 adjoining lots was established in about 1917 when the defendants first laid a concrete curb along said boundary line, which curb was subsequently replaced by the now existing concrete curb.

Defendants contend they have claimed title to the land up to and including the edge of this concrete curb since some time prior to 1920 and their claim of ownership and possession was actual, visible, open, notorious, exclusive, hostile, and under claim of right continuously and uninterrupted for more than the statutory period of 15 years.[*]

Plaintiffs replied to the cross bill denying defendants and cross plaintiffs' claimed ownership, but alleging they gave permission for the curb to be established, alleging both parties well knew the curb was not built on the property line, denying the boundary line was established by a concrete curb laid in the year 1917, and alleging the permissive use earlier given was withdrawn in 1951 following a survey.

Considerable testimony was taken before the chancellor indicating that defendant Otto Arndt and his father, Frank Arndt, had purchased lots 3 and 4 from Emil Vogt and wife, common grantors, in 1915, and plaintiffs had acquired lot 3 in 1920 from defendant Otto Arndt's father.

Defendant and cross plaintiff Otto Arndt testified that he was a bricklayer and mason; that his father measured and laid out his house for him;

---

[*] See CL 1948, § 609.1 (Stat Ann § 27.593).—Reporter.

that he had always used the Martin side of the house for his driveway; that his coalbin was located on that side and in delivering coal this side of the house was used. He further stated that in 1917 he and his father built a concrete curb which was down about 2-1/2 feet in the ground and extended about 6 inches above the normal ground; that this was done to indicate the line between the 2 pieces of property; that from that day to 1951 he claimed ownership of all property from his house to the edge of the curb. He further testified that later the curb deteriorated and he rebuilt it raising it to a height of approximately 12 inches above the ground without any objections from plaintiffs Martin; that the increase in height was made so as to preclude his driving onto the Martin property.

Defendants called witness Elsie Fettig, who testified that exhibit A was a photograph she took of her mother and Mrs. Arndt on defendants' porch; that her mother died on August 29, 1920; and that the photograph showed a driveway curb existed at the time she took the picture prior to her mother's death.

Another photograph was introduced in evidence showing Margaret Arndt, a niece of defendants, as a young girl seated on defendants' porch. This photograph showed a curb existed on the property at that time. In 1952 Otto Arndt testified that his niece was then past 34 years of age and he would say she was 2 or 3 years old at the time the picture was taken.

Plaintiffs established that they were record title holders. Plaintiff Frederick Martin testified that defendant Otto Arndt asked permission about putting a curb along the driveway, saying that he did not have sufficient room to get his car in and out, and it would help to have a little more space on his driveway; that in the interests of being a good neighbor

plaintiffs granted him permission to do so. Plaintiff Frederick Martin further testified that this was some time about 1925 or 1926 and previous to the installation of the first curb. He denied that the lot line had ever been established or that a curb existed there prior to 1925 or 1926.

Plaintiffs introduced the testimony of witness Yonke who lived in the house on lot 3 immediately prior to its purchase by plaintiffs. He testified that no curb existed there at the time he lived on the premises.

There is no question that there was a real dispute with respect to the testimony of witnesses on both sides. The chancellor in a very lengthy opinion found as follows:

"Viewing all the testimony in the case, together with the exhibits introduced and the physical aspects of the property itself, the court is of opinion and so finds the fact to be, that the concrete curbline is the lawful boundary line between the litigant adjoining property owners. Whether the line as originally placed by the concrete curb was so located by reason of its being the true line, or by reason of an honest belief or mistake that it was the true line, or by whatever means the line was visibly located, the court finds that the defendants have met and fulfilled all the requirements necessary to establish title to the disputed strip of land by adverse possesion."

The following were among the reasons given by the chancellor as to why he felt defendants and cross plaintiffs had fulfilled all requirements necessary to establish title to the disputed land by adverse possession:

(1) Unequivocal testimony of defendant Otto Arndt that he had built curb on boundary line his father had pointed out to him to be the true boundary.

(2) Defendants had always claimed this to be the true boundary.

(3) Curb was built solely on a good-neighbor basis and not by direction or compulsion.

(4) No mention of curb from 1920 to 1951 when dispute arose.

(5) Defendants' offer to buy disputed strip after trouble arose was only for the sake of avoiding trouble and continuing peace between the parties.

(6) If plaintiffs actually knew where true boundary was located why did they have survey made to determine it.

(7) Many years of undisturbed and uninterrupted possession of disputed land, together with testimony relative to facts and circumstances by which the curb line was located, negatives the idea that the selected line was permissive.

(8) Thirty years of uninterrupted possession is inconsistent with oral permissive use.

(9) Defendants who owned an automobile when curb was built would not reasonably locate their house and garage to make the adjoining driveway too narrow for use.

(10) Not compatible with good sense that 2 such friendly neighbors for over 30 would leave so vital a matter as ownership of land and location of the boundary line in the first instance to an informal oral agreement.

(11) Acquiescence in the location of so permanent and visible a marker as this curb is persuasive to a high degree of certainty that plaintiffs regarded the concrete curb as the true boundary line.

(12) Silence, plus physical existence of driveway and concrete curb boundary line, undisturbed for nearly 30 years, more than counterbalances, in proof, the claimed permissive use of strip of land in dispute.

(13) Viewing all the testimony in the case, to-

gether with exhibits* introduced and physical aspects of property itself, is sufficient to show curb line is the lawful boundary line.

I do not disagree with by Brother with respect to the law and the burden of proof with reference to adverse possession as stated in the case of *Burns* v. *Foster,* 348 Mich 8. In my opinion this Court is not in as good a position as the trial chancellor to determine what the facts are with respect to conflicting testimony. This Court in numerous cases has so indicated. The trial chancellor heard the witnesses, observed their demeanor on the stand, and was in the best position to determine their credibility and to conclude what the facts in the case really were. While this Court tries chancery cases *de novo,* it gives great weight to the findings of the trier of the facts, particularly where there is conflict in the testimony. This Court should not substitute its judgment for that of the chancellor. *Quackenbush* v. *Quackenbush,* 305 Mich 704; *Zak* v. *Gray,* 324 Mich 522; *Minasian* v. *Boyce,* 340 Mich 438; *Straith* v. *Straith,* 355 Mich 267.

We affirm the decree of the lower court. Defendants and appellees may have costs.

Smith, Black, Edwards, and Voelker, JJ., concurred.

---

* (1) Exhibit "A" taken by one Elsie Fettig of her mother and 2 other people. Since her mother died in 1920 the picture must have been taken prior to her death. This picture showed the curb which must have existed at least by 1920.

(2) Exhibit "C"—a photograph of a niece of defendants taken when the child was approximately 2 or 3 years old. This niece is now 34 years of age (at time of trial). This photograph also showed the curb which would place its time of construction about 1920 or before.