PRESERVE THE DUNES, INC v DEPARTMENT OF
ENVIRONMENTAL QUALITY (ON REMAND)

Docket No. 231728. Submitted August 25, 2004, at Lansing. Decided
October 28, 2004, at 9:00 a.m.

Preserve the Dunes, Inc., brought an action under the Michigan
environmental protection act (MEPA), MCL 324.1701 *et seq.*, in
the Berrien County Trial Court against the Department of Environment Quality (DEQ) and TechniSand, Inc., seeking injunctive
relief against a TechniSand sand dune mining operation and
challenging the DEQ's decision to issue a sand dune mining permit
to TechniSand. After a bench trial, the court, Paul L. Maloney, J.,
found in favor of the defendants. The Court of Appeals, OWENS, P.J.,
and MARKEY and MURRAY, JJ., reversed and remanded for entry of
an order granting summary disposition for the plaintiff. 253 Mich
App 263 (2002). The Supreme Court reversed and remanded the
matter to the Court of Appeals for an expedited review of the trial
court's finding that TechniSand's mining operation does not
violate MEPA. 471 Mich 508 (2004).

On remand, the Court of Appeals *held*:

1. The trial court did not clearly err in its findings of fact and
there was no error in the trial court's application of MEPA in the
context of the issuance of a permit under the sand dune protection
and management act, MCL 324.35301 *et seq.*, by the DEQ to
TechniSand to permit sand dune mining as restricted by the
permit at the site involved in this case.

2. MEPA, at MCL 324.1703(1), provides the road map to follow
in determining ultimate findings of fact relating to pollution, and
MEPA, at MCL 324.1701, grants the trial court the discretion to
use an established standard for pollution or, if the standard is
deficient, to use a standard specified and approved by the court.

3. The standard to apply to claims that MEPA has been
violated in the context of the sand dune mining act (SDMA) is
found at MCL 324.63709. That statute requires denial of a sand
dune mining permit if the department determines that the proposed activity is likely to pollute, impair, or destroy the air, water,
or other natural resources or the public trust in those resources. It
specifically incorporates MEPA when referring to the above bases

for denial of a sand dune mining permit. During the bench trial, the trial court heard and saw the evidence and made detailed factual findings based on expert witnesses' testimony. The court considered valid, applicable, and reasonable factors that could be measures of future environmental effects, including those delineated in *Portage v Kalamazoo Co Rd Comm*, 136 Mich App 276, 282 (1984), and those required by the SDMA to be addressed in the environmental impact statement, MCL 324.63705. The trial court did not apply an erroneous standard in reviewing the issuance of the permit.

Affirmed.

ENVIRONMENT — ENVIRONMENTAL PROTECTION ACT — SAND DUNE MINING — STANDARD OF REVIEW.

The standard of review for a claimed violation of the Michigan environmental protection act in the context of the sand dune mining act is found at MCL 324.63709, which provides that the Department of Environmental Quality shall deny a sand dune mining permit if, upon review of the environmental impact statement, it determines that the proposed sand dune mining activity is likely to pollute, impair, or destroy the air, water, or other natural resources or the public trust in those resources as provided by the Michigan environmental protection act (MCL 324.1701 *et seq.*).

*Taglia, Fette, Dumke, Passaro & Kahne, P.C.* (by *Thomas R. Fette*), *Beier Howlett, P.C.* (by *Jeffrey K. Haynes* and *L. Rider Brice, III*), and *Neal, Gerber, Eisenberg* (by *Phil C. Neal*), for the plaintiff.

*Michael A. Cox*, Attorney General, *Thomas L. Casey*, Solicitor General, and *James R. Piggush*, Assistant Attorney General, for the Department of Environmental Quality.

*Howard & Howard Attorneys, P.C.* (by *James H. Geary, Susan E. Padley*, and *Cara J. Edwards Heflin*), for TechniSand, Inc.

ON REMAND

Before: OWENS, P.J., and MARKEY and MURRAY, JJ.

PER CURIAM. Our Supreme Court has remanded this case to this Court with an instruction to review the trial court's finding that defendant TechniSand's mining dune sand does not violate the Michigan environmental protection act (MEPA), MCL 324.1701 *et seq.*; we are also directed to expedite our review. 471 Mich 508, 521, 525; 684 NW2d 847 (2004). We do not tarry restating our prior decision,[1] or our Supreme Court's decision to the contrary. Instead, we proceed with the task at hand.

In general, we review de novo the proper application of MEPA. *Preserve the Dunes,* 471 Mich 513; *Trout Unlimited, Muskegon-White River Chapter v White Cloud (After Remand),* 209 Mich App 452, 456; 532 NW2d 192 (1995). But we will not overturn a trial court's findings of fact unless they are clearly erroneous. *Id.*; *Portage v Kalamazoo Co Rd Comm,* 136 Mich App 276, 279; 355 NW2d 913 (1984). A finding is clearly erroneous when evidence exists to support it but this Court is left with a definite and firm conviction that the trial court made a mistake. *Id.* at 279-280; *Trout Unlimited, supra* at 456. On appeal, we recognize that the trial court " 'heard the witnesses, observed their demeanor on the stand, and was in the best position to determine their credibility and to conclude what the facts in the case really were.' " *Ray v Mason Co Drain Comm'r,* 393 Mich 294, 303; 224 NW2d 883 (1975), quoting *Martin v Arndt,* 356 Mich 128, 140; 95 NW2d 858 (1959); see, also, MCR 2.613(C).

The trial court heard testimony over seven days, viewed the site with representatives of all parties to the suit, and made the following factual determinations. In November 1996, defendant Department of Environmental Quality (DEQ) issued a permit authorizing

---

[1] 253 Mich App 263; 655 NW2d 263 (2002).

TechniSand to mine sand in an area partially designated as a "critical dune area" under the sand dune mining act (SDMA), MCL 324.63701 *et seq.*, and the sand dune protection and management act (SDPMA), MCL 324.35301 *et seq.* The SDMA incorporates the definition of "critical dune area" found in the SDPMA. MCL 324.63702(1); MCL 324.35301(c). Plaintiff filed suit under MEPA, seeking declaratory and injunctive relief prohibiting TechniSand's proposed mining activities in that area.

The 126.5 acre site at issue is one mile inland from Lake Michigan in Berrien County, east of Interstate 196. Slightly more than half (seventy-one acres) is designated as "critical dune area." The trial court found that the critical dune acreage at issue constitutes one-tenth of one percent of the statewide total of critical dune area. I-196, the Blue Star Highway, residential parcels, and county roadways separate the site from Lake Michigan. The trial court also found that "this site is the last acreage within critical dune areas in the entire state in which sand mining could be authorized by the DEQ." The trial court recognized that sand is a natural resource and that the critical dune area contained other natural resources, such as flora and fauna.

Both sides presented expert testimony. For various reasons the trial court ultimately concluded that defendants' experts were more credible than plaintiff's experts. Defendants' experts testified that the site was "typical and unexceptional as to flora in comparison with most of the 71,000 acres of critical dune area of the state." In addition, the court accepted defendants' expert's opinion that the water table and the inland dune ecosystem would not be significantly affected by TechniSand's proposed mining activity as restricted by the

permit[2] and carried out in accord with the mining and reclamation plan. MCL 324.63704(2)(c), 324.63706. Plaintiff does not contest the trial court's factual findings, and we find no clear error.

In making its ultimate findings under MEPA, the trial court followed the road map of MCL 324.1703(1) to determine: (1) whether plaintiff established a prima facie case that TechniSand's conduct has "or is likely to pollute, impair, or destroy the air, water, or other natural resources," and, if so, (2) whether defendants rebutted plaintiff's prima facie case with evidence to the contrary, and, if not, (3) whether defendants established as an affirmative defense that "there is no feasible and prudent alternative . . . and that [such] conduct is consistent with the promotion of the public health, safety, and welfare in light of the state's paramount concern for the protection of its natural resources from pollution, impairment, or destruction." *Id.*; see *Ray, supra* at 308-309; *Nemeth v Abonmarche Development, Inc*, 457 Mich 16, 24-25; 576 NW2d 641 (1998). The trial court also concluded the "[p]roper application of MEPA's impairment standard requires a statewide perspective," citing *Thomas Twp v Sexton Corp*, 173 Mich App 507, 517; 434 NW2d 644 (1988). The court applied the four factors outlined in *Portage, supra* at 282,[3] along with

---

[2] The permit restrictions included TechniSand granting the DEQ a permanent conservation easement to maintain the highest dune crests and distancing mining operations from an adjacent wetland and threatened plants.

[3] In the context of whether a proposed action's effect on wildlife would be so significant as to constitute an environmental risk requiring judicial intervention, the *Portage* Court opined that the factors "[t]he trial court should consider include: (1) whether the natural resource involved is rare, unique, endangered, or has historical significance, (2) whether the resource is easily replaceable (for example, by replanting trees or restocking fish), (3) whether the proposed action will have any significant consequential effect on other natural resources (for example, whether

other considerations, properly recognizing that the *Portage* factors are "not mandatory, exclusive, or dispositive," *Nemeth, supra* at 37, and concluded that TechniSand's proposed mining activities did not violate MEPA.

MEPA, at MCL 324.1701, provides:

> (1) The attorney general or any person may maintain an action in the circuit court having jurisdiction where the alleged violation occurred or is likely to occur for declaratory and equitable relief against any person for the protection of the air, water, and other natural resources and the public trust in these resources from pollution, impairment, or destruction.

> (2) In granting relief provided by subsection (1), if there is a standard for pollution or for an antipollution device or procedure, fixed by rule or otherwise, by the state or an instrumentality, agency, or political subdivision of the state, the court may:

> (a) Determine the validity, applicability, and reasonableness of the standard.

> (b) If a court finds a standard to be deficient, direct the adoption of a standard approved and specified by the court.

Thus, when deciding a claim filed under MEPA, the trial court must first determine whether a pollution control standard exists and whether to apply it. MCL 324.1701(2); *Nemeth, supra* at 35. MCL 324.1701(2) specifically authorizes the court to determine the validity, reasonableness, and applicability of any standard for pollution or pollution control "*and* to specify a *new* or *different* pollution control standard if the agency's standard falls short of the substantive requirements of

wildlife will be lost if its habitat is impaired or destroyed), and (4) whether the direct or consequential impact on animals or vegetation will affect a critical number, considering the nature and location of the wildlife affected." *Portage, supra* at 282.

the MEPA." *Nemeth, supra* at 30, quoting *Her Majesty the Queen v Detroit*, 874 F2d 332, 337 (CA 6, 1989) (emphasis in *Queen*).

Plaintiff argues that the trial court erred by considering how the proposed mining would affect the total critical dune area in the state because each and every critical dune area must be protected unless one of the two exceptions in MCL 324.63702 applies. But our Supreme Court's holding in the present case that "the SDMA does not contain an antipollution standard," and eligibility for a sand dune mining permit under § 63702 is "unrelated to whether [TechniSand's] proposed activities on the property violate MEPA" fatally undercut plaintiff's argument. 471 Mich 516, 519.

Plaintiff also claims that the Legislature established applicable pollution control standards in its findings in § 35302 of the SDPMA, MCL 324.35302:

> (a) The critical dune areas of this state are a unique, irreplaceable, and fragile resource that provide significant recreational, economic, scientific, geological, scenic, botanical, educational, agricultural, and ecological benefits to the people of this state and to people from other states and countries who visit this resource.

> (b) Local units of government should have the opportunity to exercise the primary role in protecting and managing critical dune areas in accordance with this part.

> (c) The benefits derived from alteration, industrial, residential, commercial, agricultural, silvicultural, and the recreational use of critical dune areas shall occur only when the protection of the environment and the ecology of the critical dune areas for the benefit of the present and future generations is assured.

Plaintiff argues that because the Legislature found that sand dunes are "unique" and "irreplaceable," the scope of the analysis of the environmental effect of sand mining must be limited to the particular dune that will be impaired or destroyed.

264 264 MICH APP 257 [Oct

The trial court rejected subsections b and c of MCL 324.35302 as pollution standards, but ruled that it would give subsection a "due weight." The court determined that because subsection b deals with the role of local government in the protection of dunes, it could not be construed as a pollution standard. Furthermore, the word "use" in subsection c could not apply to the DEQ in granting permits for sand mining because the definition of "use" in the SDPMA expressly excludes sand mining under the SDMA.[4] The trial court reasoned:

> By exempting sand dune mining from the definition of "use" in Part 353 (MCL 324.35301(j)), and yet in the succeeding section, declaring that critical dune areas are irreplaceable, it is clear that the legislature contemplated sand dune mining in critical dune areas under the umbrella of MEPA. . . . The calculus for the court's *de novo* determination must include the notion that sand as a natural resource in a critical dune area will be removed, but that fact is not dispositive in and of itself to preclude mining. Indeed, plaintiff concedes that permanent removal of sand is not a per se violation of MEPA.

The trial court further opined that to read MEPA and the SDPMA as barring any permanent removal of sand for commercial or industrial purposes would, in essence, render the SDMA meaningless. The trial court then determined that the *Portage* factors were "partially instructive" and concluded on the basis of its review of the expert testimony presented that TechniSand's proposed mining activities did not violate MEPA.

---

[4] MCL 324.35301(j) provides:

"Use" means a developmental, silvicultural, or recreational activity done or caused to be done by a person that significantly alters the physical characteristic of a critical dune area or a contour change done or caused to be done by a person. Use does not include sand dune mining as defined in [the SDMA].

Regarding the removal of sand from the critical dune area in question, the trial court reasoned that

> 71 acres of this site is located in a critical dune area as defined. Critical dune areas, as a whole in the state of Michigan are a resource under MEPA's umbrella of protection. As part of all critical dune areas in Michigan, this subject 71 acres is one tenth of one percent (0.1%) of the entire state's resource. In addition, as already stated, this is the last site in Michigan under current law which is eligible for the issuance of a sand dune mining permit in a critical dune area. Accordingly, the mining of this 71 acres will not implicate a scarce or even soon-to-be scarce resource. Indeed, under current law, the critical dune resource of our state has absolute protection from further mining henceforth. Under these circumstances, this court cannot conclude that the critical dune areas as a whole in this state will be destroyed or impaired within the meaning of MEPA.

We can find no legal error in the trial court's reasoning. Our Supreme Court opined in this case that MCL 324.63709 was the appropriate statute under which to consider plaintiff's claims under MEPA. 471 Mich 521. MCL 324.63709 incorporates MEPA into the SDMA by providing that the DEQ "shall deny a sand dune mining permit if, upon review of the environmental impact statement, it determines that the proposed sand dune mining activity is likely to pollute, impair, or destroy the air, water, or other natural resources or the public trust in those resources, as provided by [MEPA]." Thus, in a MEPA action involving the SDMA, such as this one, the statute requires the trial court to use an approach that assesses the total effect of the sand dune mining on the environment, not just the effect on the particular location from which sand is to be removed. We find support for this conclusion in the scope of the environmental impact statement (EIS) necessary to obtain a sand dune mining permit. MCL 324.63704(2)(b), 324.63705. The

EIS must specifically address the effect of the proposed activity on the immediate area and on other natural resources, including the groundwater, air, flora, fauna, and wildlife habitats. *Id.*

Moreover, in MCL 324.35302(a), the Legislature refers collectively to the critical dune areas of Michigan as *a* natural resource. The individual dunes themselves are apparently not contemplated. Consequently, the trial court did not err in assessing the mining of the critical dune area on the site in relation to its effect on the total acreage of critical dune area in the state to determine the extent to which the natural resource, i.e., all the critical dune areas in the state, would be impaired or destroyed by TechniSand's mining of sand.

After concluding that TechniSand's proposed mining activity would not impair or destroy this state's natural resource, critical sand dune areas, within the meaning of MEPA, the trial court assessed "whether other natural resources on the site will be implicated so as to rise to the level of impairment or destruction of a natural resource." The trial court concluded that evidence of minimal effect on nonscarce animal life did not merit judicial intervention under MEPA. The trial court recognized that "one of the primary purposes of the MEPA is to protect our natural resources *before* they become 'scarce.' " *Nemeth, supra* at 34. Nevertheless, the trial court found the evidence did not merit MEPA intervention. We find no error.

The trial court also found from the expert testimony presented at trial that three plant species of potential significance existed at the site: Juncus Scirpoides, Ludwigia Alternefolia, and Rexus Virginia. Of these three species, the trial court found that only Juncus was threatened. Further, the trial court found from the testimony of plaintiff's expert, Dr. Barbara Madsen,

who testified that the site was "ecologically significant," that plaintiff had presented sufficient evidence to establish a prima facie case of a MEPA violation. But the trial court found that Madsen's testimony, for a number of reasons, was unpersuasive on critical points. Instead, the trial court accepted both the testimony of Peter Collins, who prepared the EIS for TechniSand's application for its sand dune mining permit, and Dr. Frederick Goff, whom the trial court found to be highly qualified in the science disciplines necessary to the determinations in this case. The trial court found the testimony defendants presented to be "persuasive to the point of conclusively rebutting that portion of plaintiff's case relating to flora." Consequently, the trial court found it "unnecessary to address the statutory affirmative defenses propounded by the defendants . . . ." We do not find clear error in the trial court's factual findings, nor do we find error in the trial court's application of the law. *Nemeth, supra* at 24-25; *Portage, supra* at 279.

Plaintiff also argues that the trial court erred by utilizing the *Portage* factors because, as our Supreme Court stated in *Nemeth, supra* at 34, the primary purpose of MEPA is to protect our natural resources before they become scarce. Instead, as noted above, plaintiff asserts the appropriate standard is that set forth by the Legislature: critical dune areas are unique and irreplaceable. Plaintiff's argument presents a question of law, the proper application of MEPA, which we review de novo. 471 Mich 513.

As we discussed above, the standard to apply to claims that MEPA has been violated in the context of the SDMA is found at MCL 324.63709, which incorporates MEPA. To obtain a sand dune mining permit, the applicant must complete an EIS pursuant to the re-

quirements of MCL 324.63705. Many of the factors listed in the statute are comparable to the factors this Court outlined in *Portage*.[5] Thus, both MCL 324.63705 and *Portage* require the court to evaluate the environmental situation before the proposed action, the effect of the activity on the surrounding environment, and whether the proposed activity will affect the flora, fauna, or other natural resources in the area. In addition, both *Portage* and MCL 324.63705 state that the list of factors is not exclusive. Plaintiff has not argued, and cannot successfully argue, that the factors in MCL 324.63705 are not "valid, applicable, and reasonable." *Nemeth, supra* at 35; MCL 324.1701(2)(a).

Our review of the trial court's opinion reveals that its analysis focused on the expert testimony both in support of and challenging the findings in the EIS. In writing its opinion, the court conducted a review de novo of the evidence and made detailed factual findings based on the experts' testimony. *Nemeth, supra,* at 34; *City of Jackson v Thompson-McCully Co*, 239 Mich App 482, 489; 608 NW2d 531 (2000). The court did not limit its review to consideration of the *Portage* factors; it also addressed other considerations such as the effect of the mining on ground water levels, the proximity of the mining to other development, the compatibility of the mining with adjacent uses and setback requirements, and the experts' opinions regarding the inventory of threatened and endangered flora and fauna. All these considerations are pertinent to demonstrating a MEPA violation justifying judicial intervention. Consequently, the trial court did not apply the wrong standard.

In sum, we find no clear error by the trial court in its findings of fact, and we find no error in the trial court's

---

[5] See n 4.

application of MEPA in the context of the SDMA permit issued by the DEQ to TechniSand to permit sand dune mining as restricted by the permit at the site in question. Accordingly, we must affirm the decision of the trial court.

We affirm.